# Russell *v.* Moffitt *et al.*

By the chancery practice of this state, if the cause be set down for hearing by the complainant on bill and answer, at the return term, as it may be under our statute, the entire answer is to be taken as true; but if there is a continuance and depositions opened, as the rule of court dispenses with a replication to the answer, the cause stands as on replication filed, and all matter in evidence set up by the answer must be proved; but this rule does not apply, unless new matter is set up by the answer, which is not responsive to the bill.

Where the vendee held a penal bond for title, the court refused to decree a specific performance, where the vendor could not perform without violating a prior equity which he had created.

IN ERROR from the court of chancery.

The bill stated, that on the 18th day of March, in the year 1835, Russell entered into a contract with Moffitt for the sale and purchase of lands described in the bill; Russell executed his promissory note for the purchase money. Moffitt represented that he had a good right to sell and convey the lands, and did on the day and year above mentioned, execute his penal bond in the sum of four thousand dollars, in favor of Russell, conditioned that he would, on the first day of May, in the year 1835, make or cause to be made to Russell a good and complete fee simple title to the said lands, which deed was duly proven and recorded according to law. That since the time of the contract Russell had been informed that one Robert McKay was joint owner of the lands with Moffitt, and that Moffitt could not convey in his own right more than one undivided moiety; that Russell was induced by the representations of Moffitt to believe that he was fully authorized to sell and convey the whole; and that he does not now know certainly that the legal title to the land is not entirely in Moffitt. That Russell was ready and willing, and still is ready and willing to pay the sum of money agreed to be paid by him for the lands, if Moffitt will make him a complete title thereto, according to the terms of

Russell v. Moffitt ef al.

his bond; that Russell entertained no doubt that Moffitt would comply with his contract, until about the first of April, in the year 1835, when he received a letter from him stating that he had conveyed by deed to McKay his undivided interest in the lands, and that he now throws himself upon Russell's generosity, and proposes to rescind the contract, tendering Russell's note. The bill charged, that Moffitt, finding the lands were rising rapidly in value since the contract, combined with McKay, who is prayed to be made a defendant, to defraud Russell, and that he wholly refuses to make a title to the lands or to any portion of them. That the right to an undivided moiety of the lands was in Moffitt at the time of the contract, and that he was authorized by McKay to sell the other half; that the conveyance by Moffitt to McKay, and the refusal of the latter to join the former in a conveyance to Russell was fraudulent.

The bill prayed for subpœna, &c., and that Moffitt and McKay be made to answer and state, what consideration, if any, passed from McKay to Moffitt for the conveyance by the latter to the former of his undivided interest in the lands; that the said conveyance be decreed to be delivered up and cancelled; that if it be true that the title to the lands was in Moffitt at the time of the contract, or if he was authorized to sell McKay's interest in the same, they be decreed to join in a conveyance to Russell; and if not, that Moffitt be compelled to convey his undivided interest, allowing a proper deduction from Russell's note for the payment of the purchase money; that a partition of the lands be made between Russell and McKay, in case the former be not entitled to a decree for the whole, and prays for general relief, &c.

Answer of Moffitt was filed on the second day of January, 1836, and stated that the lands described in the bill were entered in the joint names of Moffitt and McKay, the money was advanced by McKay, and that upon Moffitt's paying one-half of the fund so applied, with ten per cent. interest, he was to have a moiety of the lands so entered.

That previously to the contract set out in the bill, Moffitt had explained to Russell the nature of the contract for the entry of the lands in controversy by Moffitt and McKay; denied, that Moffitt represented to Russell that he had a right to sell or convey the

whole of the lands; admitted the execution of the title bond, but stated that it was delivered to be obligatory upon the consideration that McKay would sanction the sale: set out the note made by Russell concurrently with the executing of the bond, by which it appears that Russell promised on the first of May 1835, to pay to Moffitt one thousand and thirteen dollars, provided, he should make to him by that time, a deed to the lands according to the bond. That after the delivery of the bond, Moffitt endeavored to procure the consent and sanction of McKay to his contract with Russell, but that McKay refused; that Moffitt thereupon sent his brother, as his agent, with the letter and note above referred to, who, as Moffitt is informed by him and believes, offered to surrender the note and take back the bond, which Russell refused to do; that previously to writing the letter, Moffitt proposed to convey one undivided moiety of the lands, provided Russell would pay him one half of the sum mentioned in his note, which proposal Russell rejected; that Moffitt thereupon relinquished and conveyed to McKay his interest in the lands, being unable otherwise to pay him the one half of the money advanced for the entry of them; admitted that the lands rose in value between the date of the bond and the relinquishment to McKay; but denied, that the conveyance to McKay was made for any other purpose than above declared, or with any fraudulent design whatever; denied all fraud, &c., alleged in the bill, and prayed that the bill be dismissed, &c.

At a court holden on the 30th day of January 1839, judgment *pro confesso* was rendered by the Chancellor against the defendant, McKay, and the cause set for hearing. And afterwards at a court holden on the 18th day of December 1839, this cause having been submitted for final hearing, it was ordered and decreed by the Chancellor that the bill be dismissed, and that Moffitt pay the costs of this suit; from which decree the complainant, Russell, sued out a writ of error to this court.

W. G. Thompson, for plaintiff in error.

It is deemed to be essential for a fair and complete investigation of this cause, that we discriminate accurately the lines, which separate and limit the several distinct offices of an answer to a bill in chancery. The true doctrine in relation to this subject is assumed

to be, that insomuch as the answer is responsive to the bill and within the discovery sought, it may furnish evidence against or for the defendant, as it either admits or contradicts the allegations in the bill; whilst, on the other hand, it is mere pleading, in respect of all new matters, which are set up in avoidance. In support of this distinction we cite the cases of Hart *v.* Ten Eyck and others, 2 John. Ch. Rep. 62; and of Green *v.* Hart, 1 John. Rep. 580.

This cause was submitted for final hearing on bill, answer and exhibits, alone; and since it does not appear of record that the cause was set for hearing by the complainant, according to the practice in this state, under the statutory regulation, the answer will not be taken for true, but needs to be sustained by proofs; Carman *v.* Watson and Pope, 1 How. 533.

It will be proper then, in the first place, to ascertain the nature and the precise extent of the case, which is made out by the bill, after it is stript of every thing which can be taken from it by the answer, so far as it has the force of evidence for the defendant.

The answer denies the allegation in the bill that when the parties contracted for the sale and purchase of the lands in question, the defendant represented that he had a good right, and was authorized to sell and convey the whole; and denies the further allegation that the conveyance by Moffitt to McKay, was a scheme to defraud the complainant; and, in reply to the interrogatory in the bill, the answer states that the legal title to the lands was jointly in the two defendants, that Moffitt was not authorized to sell and convey the whole, and that the consideration of the conveyance by Moffitt to McKay, was the equitable lien, which the latter had upon the interest of the former in the lands, by reason of the purchase money having been advanced by him. To these portions of the answer it is proper to allow the force of evidence, in favor of the defendant, for the reason that they are responsive to the bill and within the discovery sought. The answer cannot fairly be taken to deny the allegation in the bill, that Moffitt refuses to make a title to the complainant to any portion of the lands. It barely states that previous to Moffitt's first refusal to comply with the entire contract, he proposed to convey to Russell one undivided moiety of them, and does not state that Russell was, at that time, informed

of his inability to convey the whole. And there appears nothing to show that Russell ought to have accepted such an offer, and have waived his right to the entire contract. But admitting the fact to be true, as stated in the answer, it cannot do more than raise the question of costs. The force of evidence will not be given to so much of the answer as sets out the contract between the two defendants, for the entry of the lands, or that states that the nature and circumstances of that contract were communicated to Russell, or that the contract with Russel was conditional. These are the statements of matter, purely in avoidance. They are not responsive to the bill, nor within the discovery sought; and therefore they need to be sustained by proofs. In relation to the last of these statements in the answer, the case cited above from 1 John. Rep. is evidently stronger than the one at bar.

Thus, allowing all proper force to the answer which it is fairly entitled to, we contend that the case as made out by the statements in the bill, by the exhibit of the bond for title, and of the promissory note for the payment of the purchase money, is sufficient to entitle the complainant to the relief which is sought against the defendant, Moffitt.

McKay has suffered judgment to go against him by *pro confesso*, which is equivalent to an admission of the fact as stated in the bill, that Moffitt was authorized to convey the whole of the lands in controversy. Moreover, it is manifest that the bond for title, which was given to Russell, has the priority of the conveyance by Moffitt to McKay. These circumstances, we contend, are sufficient to entitle the complainant to relief against McKay, in conjunction with Moffitt.

Foote & Hutchinson for defendant.

The decree of the chancellor was not erroneous. The complainant took Moffitt's bond with full knowledge of the circumstances of his having entered the lands with the funds of McKay, and of the lien of McKay on Moffitt's moiety for his portion of the funds thus expended; that the consent of McKay was necessary to sanction the contract for sale. When Moffitt submitted the contract to McKay, he refused to sanction it. Moffitt then agreed to give a deed to his undivided half, remitting half the pur-

chase money. Russell refused to accept such deed. Moffitt then relinquished his moiety to McKay, and informed Russell of the fact. These facts are clearly developed in the bill and answer. There was no testimony taken by either party, and the answer being responsive was of course taken for true.

Where a cause is brought to hearing on bill and answer, the answer is to be taken as true in all points. 7 J. C. R. 217, Brinkerhoff *v.* Brown; 1 Ver. Rep. 140; 2 Ch. Ca. 21.

With all these facts before the complainant, he filed his bill to procure a deed. "Where the defendant has fairly disabled himself before the suit was brought, and this was known to the plaintiff, a specific performance cannot be decreed." Where the plaintiff files his bill with a knowledge of that fact, it amounts to a bill for the recovery of damages, which is a matter entirely of legal cognizance. Hatch *v.* Cobb, 4 J. C. R. 559; Todd *v.* Lee, 17 Ves. 273; 5 J. C. R. 173; 1 do. 370.

How more applicable is the rule to this when the defendant's contract for sale was made with a condition, and with a clear understanding that it was subject to the approval or rejection of another?

It does not appear affirmatively in the record, whether the cause was submitted by the complainant or defendant. Are we to presume that the cause was submitted by the defendant—a fact which, if it occurred, must have been known to the chancellor? Or that the complainant, who had ample time, since the filing of the answer, to fortify his bill by testimony, submitted the cause, and that the chancellor did not err in dismissing complainants' bill?

Mr. Chief Justice SHARKEY delivered the opinion of the court.

For the appellant it is contended that the answer cannot be taken as true, any further than it is responsive to the bill, and that the decree was therefore wrong; whilst on the other hand it is contended that the entire answer is to be taken as true.

We understand the practice in this state to be, that if the cause be set down for hearing by the complainant on bill and answer at the return term, as it may be under our statute, that then the entire

answer is to be taken as true; but if there be a continuance and deposition opened, then, as the rule of court dispenses with a replication to the answer, the cause stands as though a replication had been filed, and all matter in avoidance set up by the answer must be proved.    There were several continuances in this case, and under this rule, if the answer contained matter which was not responsive to the bill, it should have been proven; but does it set up new matter?

The bill prays a discovery, and, besides the general allegations, special interrogatories are propounded.    The defendants are first required to answer whether the lands were owned jointly by them, at the time of the contract; and if they were, whether he Moffitt, was not authorized to sell the same.    Second: what consideration passed from McKay to Moffitt for his interest in the land?    Third: what amount of money was paid by McKay therefor, or what was to be paid, and when and how secured?    Moffitt answers, in substance, that the land was entered by him in the name of himself and McKay, with money furnished by McKay, according to an agreement for that purpose.    That it was agreed when he should pay McKay half of the money so invested, with ten per cent. interest, he was to have half the lands entered.    The answer also denies that he represented himself as being the absolute owner and able to convey, but avers that complainant was fully apprised of the nature of his title, and that the bond was given to be operative only on condition that the sale should be sanctioned by McKay.    It also avers that the respondent offered to convey his undivided moiety to complainant on the payment of a certain sum, which proposition was refused, and concludes by averring that being unable to pay McKay the money, the land was conveyed to him according to their contract.

Now, it may be that there is some matter here which is not fairly responsive to the bill.    It is often difficult to confine the answer within the precise limit, and it is especially so where the transaction is complicated; but surely there is enough of this answer which is strictly responsive of the bill, to justify an affirmance of the decree.    The nature of the ownership between respondent and McKay is called for, and it is stated.    The consid-

Russell *v.* Moffitt *et al.*

eration given by McKay is called for, and it could have been stated in no other way than by disclosing the contract between them, and thus enough is properly stated in the answer to show that Moffitt could not convey. The complainant is secured by a penal bond, on which he has a remedy at law, and to that he must look for redress. Against the prior equity of McKay we cannot decree a specific performance; to do so would be to enforce a contract made in breach of a private duty.

The decree of the chancellor must be affirmed.